## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN M. GERA,** | : | **No. 3:07cv764** |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, ATTORNEY** | : | |
| **GENERAL,** | : | |
| **BOROUGH OF SHENANDOAH,** | : | |
| **JOSEPH L. PALUBINSKY,** | : | |
| **MICHAEL A. O'PAKE,** | : | |
| **MATTHEW R. NESTOR,** | : | |
| **JAMIE R. GENNARINI, and** | : | |
| **FRANK R. CORI, former District** | : | |
| **Attorney of Schuykill County,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court for preliminary consideration is plaintiff's complaint (Doc. 1).

Because plaintiff filed an application to proceed *in forma pauperis* with this court

(Doc. 2), we give his filing a preliminary screening to determine whether we should

allow the issuance of summons and service of the complaint.

**Background**[1]

This case arises out of a dispute between the plaintiff and officials of the

Borough of Shenandoah, Pennsylvania.  On October 18, 2004, plaintiff attended a

---

[1]We derive these facts from the plaintiff's complaint, accepting them as true for the purpose of our preliminary consideration.

meeting of the Shenandoah Borough Council.  (Complaint (Doc. 1) (hereinafter

"Complt.") at ¶ 12).  At that meeting, he asked the council if he needed a permit to

protest in the Borough.  (Id.).  Plaintiff repeated his questions at a Borough Council

meeting on November 15, 2004.  (Id. at ¶ 13).  Plaintiff contends that he was "well

behaved" at that meeting and was never asked "to be [quiet], to sit down or to leave."

(Id. at ¶ 14).  He also alleges that Borough Solicitor Michael O'Pake threatened to

punch him in the face when the two had a verbal disagreement after the November

15, 2004 meeting.  (Id. at ¶ 103).  On December 10, 2004, a friend informed plaintiff

that a newspaper story had reported he had been charged with two counts of

"persistent disorderly conduct" and two counts of disrupting meetings.  (Id. at ¶ 15).

According to the newspaper, plaintiff had disrupted the Council meetings with "loud"

and "belligerent" behavior towards officials.  (Id. at ¶ 16).  Police asserted that

plaintiff continued to disrupt the meetings after warnings to stop.  (Id.).  These

officials also claimed that plaintiff's behavior had "prevented the council from tending

to borough business."  (Id.).  Plaintiff alleges that none of these claims by the police

were true.  (Id.).

On December 14, 2004, plaintiff received in the mail a criminal complaint

charging him with disrupting public meetings and a summons to a preliminary

hearing.  (Id. at ¶ 18).  Police never interviewed him before charging him.  (Id. at ¶

19).  On December 29, 2004, plaintiff received notice that his hearing on the charges

was continued.  (Id. at ¶ 21).  Over the next four months, plaintiff received four more

such notices.  (Id.).  On April 14, 2005, plaintiff sent notice to the Borough of

Shenandoah of his intent to sue.  (Id. at ¶ 22).  On May 4, 2005, plaintiff appeared at

a preliminary hearing before Judge Joan K. Hausman.[2]  (Id. at ¶ 23).  All charges

against him were withdrawn.  (Id.).

On April 24, 2007, plaintiff filed a ten-count complaint in this court pursuant 42

U.S.C. § 1983 ("section 1983").  The complaint named as defendants the Attorney

General of Pennsylvania; the Borough of Shenandoah; Joseph Paulbinsky, a city

manager; Michael A. O'Pake, the Borough Solicitor; Matthew Nestor, the Borough's

police chief; Borough Police Officer Jamie Gennarini; and Frank R. Cori, the former

District Attorney of Schuylkill County, Pennsylvania.  Only Count I alleges violations

of federal law that would give this court jurisdiction.  That count alleged that the

Borough violated plaintiff's civil rights through a variety of means.  Plaintiff contends

that the Borough "knew or had reason to know" that Borough police officers had

"rountinely engaged" in violations of citizens' constitutional rights.  (Id. at ¶ 30).  The

Borough failed to provide training for these officers and did not investigate or

discipline officers who violated rights.  (Id. at ¶ 32). The Defendant Attorney General

and District Attorney Cori "conspired, or at a minimum had knowledge of the

conspiracy with Shenadnoah" to arrest the plaintiff without cause.  (Id. at ¶ 33).

The remaining counts in the complaint allege state law violations, though we

could also consider those claims as attempts to state a cause of action under

---

[2]Plaintiff does not describe in which court Judge Hausman sits.

Section 1983 for violating the plaintiff's federal rights.  Court II contends that the

Pennsylvania Attorney General, District Attorney Cori and the Borough conspired to

arrest plaintiff falsely.  (Id. at ¶ 40).  Count III claims malicious prosecution against

the Borough, insisting that Shenandoah brought charges against the plaintiff but

knew that no grounds existed for them.   (Id. at ¶¶ 48, 51-56).  Count IV alleges

harassment by the Borough against the plaintiff through the filing of the charges.  (Id.

at ¶ 64).  Count V alleges negligence against Shenandoah for failing to investigate

the case against plaintiff and failing to train police officers properly.  (Id. at ¶¶ 72-73).

In Count VI, plaintiff claims that defendants slandered and defamed him in

statements to a newspaper that made him appear to be "a liar, crazy and that he

may be a danger to the public." (Id. at ¶¶ 80, 82-84).  Count VII alleges pain and

suffering and Count VIII intentional infliction of emotional distress based on the

Borough's charges against the plaintiff.  (Id. at ¶¶ 90-94, 96-101).  Plaintiff's final

count, Count IX, accuses Borough Solicitor Michael O'Pake of making terroristic

threats against the plaintiff after a council meeting.  (Id. at 103).  Plaintiff seeks

damages of $100,000 as relief on each count.  In addition to the complaint, plaintiff

filed an application to proceed *in forma pauperis*.

**Jurisdiction**

Because plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, we have

jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the

United States.").  We  have supplemental jurisdiction over the plaintiff's state law

claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

Under 28 U.S.C. § 1915(d), we are permitted "to consider whether an *in forma*

*pauperis* complaint is frivolous or malicious before authorizing issuance of the

summons and service of the complaint."  Urrutia v. Harrisburg County Police Dept.,

91 F.3d 451, 453 (3d Cir. 1996).  We may "dismiss as frivolous claims based on an

indisputably meritless legal theory and whose factual contentions are clearly

baseless."  Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).  We undertake such

an evaluation before service of the complaint.

**Discussion**

**A.  Claims barred by the Statute of Limitations**

Plaintiff raises several claims related to the conduct of individuals at or in the

days immediately following the Borough Council meetings in late 2004; we will

address them in turn.  Several of plaintiff's claims are barred by the statute of

limitations.  Pennsylvania law requires that the plaintiff commence his action within

two years of his injury.  See 42 Pa. CONS. STAT .ANN. §5524(7) (establishing a two-

year statute of limitations for "any . . . action or proceeding to recover damages for

injury to person or property which is founded on negligent, intentional, or otherwise

tortious conduct").  Moreover, Pennsylvania courts have ruled that the statute of

limitations begins to run in cases where an injury is ongoing "when the plaintiff

knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's misconduct." Cathcart v. Keene Indus. Insulation, 471 A.2d 493, 500 (Pa. Super. Ct. 1984).

Count IV of the complaint alleges harassment by the Borough.  Plaintiff does not explain the grounds for that claim in his complaint, but he appears to base this count on the behavior of the Borough and Borough officials in relation to his appearance at the council meeting and his later arrest.  Plaintiff was aware of these actions in late 2004.  The statute of limitations has now run, and Count IV is barred by it.  The newspaper article which plaintiff claims slandered him appeared in December 2004 and came to his attention shortly thereafter.  Once plaintiff saw the article, he was aware of the alleged injury to his reputation and the misconduct that caused that injury.  The statute of limitations began to run on his claim when he saw the newspaper article.  Plaintiff did not file suit until April 2007, more than two years after his claimed injury occurred.  Accordingly, his claim for slander and defamation in Count VI is barred by the statute of limitations.  Similarly, the alleged terroristic threats from Solicitor O'Pake which constitute Count IX of the complaint occurred on November 15, 2004.  The statute of limitations for plaintiff's claim related to that event began to run on that date.  More than two years had passed when plaintiff filed his action in April 2007.  Count IX is barred by the statute of limitations.[3]

---

[3]We interpret plaintiff's negligence claim in Count V as a failure to train claim.  To the extent, however, that plaintiff attempts to allege a negligence claim based on the actions of the City in relation to his protest at the council meeting, plaintiff was aware of

Plaintiff also apparently alleges that Police Officer Gennarini, who provided the

information that led to his arrest, violated his constitutional rights in that activity.  We

construe this claim as one alleging false arrest.  The United States Supreme Court

recently declared that "the statute of limitations upon a § 1983 claim seeking

damages for a false arrest in violation of the Fourth Amendment, where the arrest is

followed by criminal proceedings, begins to run at the time the claimant becomes

detained pursuant to legal process."  Wallace v. Kato, -- U.S. -- 127 S.Ct. 1091,

1100 (2007).  In Wallace, the Court found that the statute of limitations began to run

for plaintiff's false imprisonment claim not when he was released from custody, but

"when legal process was initiated against him."  Id. at 1096.  Once legal process

began, plaintiff's claim became one for malicious prosecution and "wrongful use of

judicial process rather than [one related to] detention itself."  Id.

Here, the statute of limitations on plaintiff's false arrest claim against Officer

Gennarini began to run when the Borough informed him that he was required to

attend a court hearing related to the charges about which he complains in December

2004.  At that point, plaintiff became subject to criminal proceedings; his cause of

action became one for malicious prosecution, not false arrest or imprisonment.  See

Wallace, 127 S.Ct. at 1096 (holding that "a false imprisonment ends once the victim

becomes held *pursuant to such process*–when, for example, he is bound over by a

those actions and the injury they caused more than two years before he filed his complaint.
 That state-law tort claim would also be barred by the statute of limitations.

7

magistrate or arraigned on charges.") (emphasis in original).  Since the statute of

limitations on plaintiff's false arrest claim against Officer Gennarini began to run in

December 2004, more than two years before plaintiff filed his case, his claim is time-

barred.  We will dismiss it as clearly frivolous.

**B.  Malicious Prosecution Claims**

To the extent that plaintiff's claims against the Borough and Borough officers

flow from what plaintiff terms a malicious prosecution for his comments at the City

Council meetings, those claims may not be barred by the statute of limitations.  The

statute of limitations for malicious prosecution cases does not begin to run until the

case is resolved.  See Smith v. Holtz, 82 F.3d 110, 111 (3d Cir. 1996) (holding that

"[a] necessary element of a malicious prosecution claim is the termination of the

criminal proceedings in favor of the accused.").  Charges were not dropped until

May 5, 2005, and plaintiff thus brought suit within two years of a favorable

termination of the criminal proceedings against him.  We find, however, that other

grounds exist to find most of plaintiff's claims for malicious prosecution frivolous.

**i.  Malicious Prosecution**

Plaintiff brings a malicious prosecution claim against "The elements of liability

for the constitutional tort of malicious prosecution under section 1983 coincide with

those of the common law tort."  Rose v. Bartle, 871 F.2d 331, 349 (3d Cir. 1988)

(quoting Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988)).  Accordingly, a plaintiff

must demonstrate that "(1) the defendant initate[d] a criminal proceeding; (2) which

end[ed] in plaintiff's favor; (3) which was initiated without probable cause; and (4) the

defendant act[ed] maliciously for a purpose other than bringing the defendant [sic] to

justice." Id.   For a variety of reasons discussed below, we find that plaintiff could not

prevail on his malicious prosecution claim.

**ii.  Prosecutorial Immunity**

Plaintiff seeks damages under 42 U.S.C. § 1983 against the Pennsylvania

Attorney General and District Attorney Cori for their conduct in bringing charges

against him.  With regard to the Attorney General, these claims appear to rest on a

contention that an Attorney General is somehow intimately involved in the decision

to undertake local prosecutions.  While we doubt that the Pennsylvania Attorney

General participated in the decision to charge plaintiff, we find that even if plaintiff

could prove that the Attorney General did conspire to achieve plaintiff's prosecution,

he would be immune from suit under 42 U.S.C. § 1983 for the decision to bring

charges. The United States Supreme Court has found that "in initiating a prosecution

and in presenting the State's case, the prosecutor is immune from a civil suit for

damages under § 1983." Imbler v. Pachtman, 424 U.S. 409, 430 (1976).  Since

plaintiff's complaint here is that the Attorney General improperly initiated a

prosecution against him, we find that the Attorney General is absolutely immune

from suit about that decision to prosecute.  For the same reason, we find that District

Attorney Cori enjoys immunity from suit under § 1983. See Kulwicki v. Dawson, 969

F.2d 1154, 1163-64 (3d Cir. 1992) (holding that "[t]he decision to initiate a

prosecution is at the core of a prosecutor's judicial role [citations omitted].  A

prosecutor is absolutely immune when making this decision, even where he acts

without a good faith belief that any wrongdoing has occurred [citations omitted].

Harm to a falsely-charged defendant is remedied by safeguards built into the judicial

system–probable cause hearings, dismissal of the charges–and into the state codes

of professional responsibility.").  These claims are thus "clearly baseless" and we will

dismiss them.  Jeffes, 904 F.2d at 192.

**vi.  Defendant Nestor**

Plaintiff includes Defendant Matthew R. Nestor in the complaint.  He is sued in

his individual capacity and in his capacity as Chief of Police for the Borough.  The

complaint does not allege any action undertaken by the Chief Nestor that would give

rise to a claim against him, and we are forced to conclude that plaintiff brings suit

against Defendant Nestor because a police officer under his supervision brought an

unsubstantiated claim against him.  To the extent that Chief Nestor faces suit in his

individual capacity, he faces suit in a *respondeat superior* fashion.  *Respondeat*

*superior* liability is unavailable under section 1983, and plaintiff's claim is therefore

legally baseless.  See Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082

(3d Cir. 1976) (finding that a Section 1983 claim could not be made against a prison

warden when that warden had not participated in or had actual knowledge of prison

guards' alleged wrongdoing and "in § 1983 suits liability may not be imposed on the

traditional standards of *respondeat superior*.").  We will therefore dismiss plaintiff's

claim against Defendant Nestor as frivolous.

### iii.  Conspiracy Claims

Plaintiff also apparently claims that defendants Borough of Shenandoah, the Pennsylvania Attorney General and District Attorney Cori conspired to deprive him of his constitutional right to due process under the Fourteenth Amendment.  Because plaintiff filed his complaint *pro se*, we will assume that plaintiff attempted to state a claim under 42 U.S.C. § 1985(3), which forbids conspiracies aimed at depriving persons of rights guaranteed by federal law.  To state a claim under this provision, a plaintiff must allege "'(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" Farber v. City of Patterson, 440 F.3d 131, 134 (3d Cir. 2006) (quoting United Bhd. Of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-29 (1983)).  Section 1985(3), which is aimed at limiting interference with established rights, requires that a plaintiff "allege 'some racial, *or perhaps otherwise class-based,* invidiously discriminatory animus behind the conspirators' action' in order to state a claim." Id. at 135 (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)) (emphasis in original).

Plaintiff alleges no facts by which he could meet this standard.  Plaintiff's complaint is with the decision of prosecutors to institute charges against him in

11

municipal court.   He claims that the Pennsylvania Attorney General conspired with the local District Attorney and the Borough to deprive him of his right to due process. Plaintiff's claim therefore does not allege that his equal protection rights were violated, but that the procedure he received when charges were filed against him was improper.   Plaintiff also does not claim that the alleged conspiracy was motivated by any discriminatory animus towards a class of people to which plaintiff belongs.   He thus has not stated a claim for relief under § 1985(3).   Plaintiff could not do so.   Plaintiff's claim is apparently that defendants conspired against him because of his desire to express himself to the Borough Council and perhaps because of his desire to obtain a permit for a political protest.   The discriminatory animus that plaintiff here alleges, then, is not based on his membership in a class of persons, but on his particular conduct.   He is thus not a member of a "class" as defined in the law, and could not make out a Section 1985(3) claim against the defendants.   See Farber 440 F.3d at 136 (holding that "'women,' or 'registered Republicans,' may constitute an identifiable 'class' as opposed to a more amorphous group defined by 'conduct the § 1985(3) defendant disfavors,' such as 'women seeking abortion,' [citation omitted] or 'persons who support political candidates.'").   His conspiracy claim is thus indisputably meritless as a legal matter and we will dismiss it.

## iv. Municipal Liability

Plaintiff brings claims under section 1983 against the Borough of Shenandoah. Under that statute, municipal liability is available only under certain circumstances.

Torts committed by employees do not make a municipality liable and "a local governing body can be held liable only for an official policy or custom." San Filippo v. Bongiovanni, 30 F. 3d 424, 445 (3d Cir. 1994). Under the standard first articulated in Monell v. Dept. of Soc. Servs., "local governing bodies . . . can be sued directly under §1983 . . . where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dept. of Soc. Servs. of the City of New York, 436 U.S. 658, 690 (1978). Thus, "[a] public entity . . . may be held liable for the violation of a constitutional right under 42 U.S.C. § 1983 only when the alleged unconstitutional action executes or implements policy or a decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy." Reitz v. County of Bucks, 125 F.3d 139, 144 (3d Cir. 1997). Liability exists when "'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989).

As a result of this standard, plaintiff's claims against the Borough are legally meritless and we will dismiss them. Plaintiff does not allege that his injuries were a result of a policy or custom of the Borough, and he could not do so. He claims injury from the actions of Borough officials in deciding to prosecute him and to reveal this decision and the basis for it to the local newspaper. Plaintiff does not point to any

13

Borough policy that dictated this behavior, or to any established practice of prosecuting those who expressed opinions at Council meetings.  The injury of which he complains, therefore, is the result of a particular conflict between plaintiff and city officials, not the result of any policy or custom adopted and applied in official Borough actions.  He therefore could not prove any causal link between his injuries and municipal policies or customs, and his claims against the Borough are legally baseless.  See Brown, 269 F.3d at 214.  We will dismiss them as frivolous.

**v.  Failure to Train**

Plaintiff also appears to allege that the Borough failed to train its employees to prevent violations of citizen's federal legal rights.[4]  The United States Supreme Court has concluded that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989).  A failure to train "may form a basis for municipal liability under section 1983 only if 'both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate' are present." Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997) (quoting Freedman v.

---

[4]Plaintiff labels Count V as a negligence claim.  In that claim, he alleges that "[t]he inadequate training of the police officers described in this Complaint was Borough of Shenandoah's policy."  (Complt. at ¶ 72).

City of Allentown, 853 F.2d 1111, 1117 (3d Cir. 1988).  "Establishing municipal

liability on a failure to train claim under § 1983 is difficult."  Reitz, 139 F.3d at 145.

To succeed, a plaintiff "must identify a failure to provide specific training that has a

causal nexus with [his] injuries and must demonstrate that the absence of that

specific training can reasonably be said to reflect a deliberate indifference to whether

the constitutional deprivations occurred."  Id.

        Based on the facts plaintiff alleges, his failure to train claim has no merit.

Plaintiff alleges that he was a victim of a malicious prosecution because he spoke at

a Borough Council meeting.  Plaintiff alleges that the municipality responded to his

exercise of free speech by bringing charges against him for disrupting a meeting and

by defaming him to a local newspaper.  He also contends that the municipality

violated his rights by failing to train its officers to avoid such violations.  We have

concluded that these underlying claims lack merit.  Since plaintiff could not prove

that his rights have been violated, he could not prove that a failure in training had

caused such a violation.   In addition, plaintiff could not prevail on a failure-to-train

Courts have found that a failure-train claim requires more than a simple allegation of

bad behavior by municipal officials.  A party making such a claim must demonstrate

that municipal officials were deliberately indifferent to the plaintiff's rights in not

providing particular training that would have prevented the violation.  See City of

Canton, 489 U.S. at 388.  To allow claims without finding a particular deficiency in

training, courts have concluded, would be to allow the sort of *respondeat superior*

15

liability unavailable under § 1983. See Reitz, 125 F.3d at 145 (finding that in a

municipal liability case "stringent standards of culpability and causation must be

applied to ensure that the municipality in a § 1983 suit is not held liable solely for

conduct of its employee."). Plaintiff's claim here does not amount to an allegation

that the Borough was deliberately indifferent in its training in a way that allowed his

rights to be violated, but instead consists of an allegation that the City wrongly

prosecuted him for speaking out at a meeting. Under no set of facts alleged by the

plaintiff could we find that this single instance demonstrates a failure to train that

constitutes the "deliberate indifference" required by the case law, and we find the

plaintiff's claim indisputably baseless.

**vi. Claims against Borough Officials in their Official Capacity**

Plaintiff brings claims against Borough Manager Jospeh Palubinsky, Solicitor

O'Pake, Chief of Police Nestor, Police Officer Gennarini and District Attorney Cori in

both their official and individual capacities. Claims against these defendants in their

official capacities are indisputably meritless. "Official-capacity suits . . . 'generally

represent only another way of pleading an action against an entity of which an officer

is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell, 436

U.S. at 690). Such suits are, "in all respects other than name, to be treated as a suit

against the entity. Id. at 166. They are "*not* a suit against the official personally, for

the real party in interest is the entity." Id. (emphasis in original). Therefore, "'[w]here

a suit is brought against a public official in his [or her] official capacity, the suit is

treated as if [it] were brought against the governmental entity of which he [or she] is

an official.'" McGreevy v. Stroup, 413 F.3d 359, 369 (3d Cir. 2005) (citation omitted).

As we find that there is no basis for claims against the Borough, we find there is no

basis for plaintiff's claims against the individual defendants in their official capacities.

## v.  Defendant Palubinsky

Defendant Joseph L. Palubinsky is identified as a manager employed by the

Borough in the complaint, and plaintiff intends to sue Palubinsky in his individual and

official capacity.  None of the facts alleged in the complaint, however, describe any

behavior that would implicate Defendant Palubinsky in any of plaintiff's claims.  He is

apparently named in the suit simply because he is a managerial employee of the

Borough.  Since plaintiff apparently admits that Defendant Palubinsky was not

personally involved in any of the wrongs plaintiff claims he faced, and since we find

that plaintiff could not state a claim against the Borough, we find that any claims

against Palubinsky would be meritless, and we will dismiss the complaint against

him.

## vi.  Pain and Suffering and Intentional Infliction of Emotional Distress

In Count VII, plaintiff seeks damages for pain and suffering caused by the

actions of the Borough and its officials.  In Count VIII, plaintiff alleges a claim for

intentional infliction of emotional distress, contending that the defendants' conduct in

bringing unwarranted charges against him and reporting those charges to

newspapers caused him "severe mental anguish, humiliation and embarrassment,

17

fear, emotional distress, anxiety and depression and loss of the usual and ordinary enjoyments of life." (Complt. at ¶ 97).  Plaintiff claims that defendants' actions were so "willful, malicious, unjustified, capricious and extreme as to be beyond all bounds of decency." (Id. at ¶ 99).  We construe these allegations as claims for damages due to defendants' alleged violations of plaintiff's federal right.  "Generally, 'damages are available under [§ 1983] for actions 'found . . . to have been violative of . . . constitutional rights and to have caused compensable injury.'" Pryer v. C.O. 3 Slavic, 251 F.3d 448, (3d Cir. 2001) (quoting Carey v. Piphus, 435 U.S. 247, 255 (1978).  Since we find that plaintiff cannot state a claim for any violation of a federal right, plaintiff could not recover for intentional infliction of emotional distress.  We will dismiss that count as well.

**Conclusion**

We will dismiss the plaintiff's complaint against all defendants.  Since plaintiff could not amend the complaint to cure its ills against those defendants, we will dismiss the case with prejudice against them.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JOHN M. GERA,                   :       No. 3:07cv764
          **Plaintiff,**    :

                               :       (Judge Munley)
                               :

          **v.**                       :

**COMMONWEALTH OF
PENNSYLVANIA, ATTORNEY
GENERAL,
BOROUGH OF SHENANDOAH,
JOSEPH L. PALUBINSKY,
MICHAEL A. O'PAKE,
MATTHEW R. NESTOR,
JAMIE R. GENNARINI, and
FRANK R. CORI, former District
Attorney of Schuykill County,**
          **Defendants**   :

**ORDER**

      **AND NOW,** to wit, this 2nd day of August 2007, upon preliminary consideration of plaintiff's complaint, the complaint (Doc. 1) is hereby **DISMISSED WITH PREJUDICE**.  Plaintiff's motion to proceed *in forma pauperis* is **GRANTED** solely for the purpose or our consideration of this motion.  The Clerk of Court is directed to **CLOSE** the case.

                 **BY THE COURT:**

                 **s/ James M. Munley
                 JUDGE JAMES M. MUNLEY
                 United States District Court**

19