## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN M. GERA,** | : | **No. 3:07cv764** |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, ATTORNEY** | : | |
| **GENERAL,** | : | |
| **BOROUGH OF SHENANDOAH,** | : | |
| **JOSEPH L. PALUBINSKY,** | : | |
| **MICHAEL A. O'PAKE,** | : | |
| **MATTHEW R. NESTOR,** | : | |
| **JAMIE R. GENNARINI, and** | : | |
| **FRANK R. CORI, former District** | : | |
| **Attorney of Schuykill County,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court is plaintiff's motion for reconsideration (Doc. 9) of this court's

memorandum and order (Doc. 8) dismissing his *in forma pauperis* (IFP) complaint.

**Background**[1]

This case arises out of a dispute between the plaintiff and officials of the

Borough of Shenandoah, Pennsylvania.  On October 18, 2004, plaintiff attended a

meeting of the Shenandoah Borough Council.  (Complaint (Doc. 1) (hereinafter

"Complt.") at ¶ 12).  At that meeting, he asked the council if he needed a permit to

---

[1]We state the facts in brief here because of the nature of plaintiff's motion.  Please
see our earlier memorandum and order for a fuller statement of the facts.

protest in the Borough.  (Id.).  Plaintiff repeated his questions at a Borough Council meeting on November 15, 2004.  (Id. at ¶ 13).  Plaintiff contends that he was "well behaved" at that meeting and was never asked "to be [quiet], to sit down or to leave." (Id. at ¶ 14).  He also alleges that Borough Solicitor Michael O'Pake threatened to punch him in the face when the two had a verbal disagreement after the November 15, 2004 meeting.  (Id. at ¶ 103).  On December 10, 2004, a friend informed plaintiff that a newspaper story had reported he had been charged with two counts of "persistent disorderly conduct" and two counts of disrupting meetings.  (Id. at ¶ 15). According to the newspaper, plaintiff had disrupted the Council meetings with "loud" and "belligerent" behavior towards officials.  (Id. at ¶ 16).  Police asserted that plaintiff continued to disrupt the meetings after warnings to stop.  (Id.).  These officials also claimed that plaintiff's behavior had "prevented the council from tending to borough business."  (Id.).  Plaintiff alleges that none of these claims by the police were true.  (Id.).

On December 14, 2004, plaintiff received in the mail a criminal complaint charging him with disrupting public meetings and a summons to a preliminary hearing.  (Id. at ¶ 18).  Police never interviewed him before charging him.  (Id. at ¶ 19).  On December 29, 2004, plaintiff received notice that his hearing on the charges was continued.  (Id. at ¶ 21).  Over the next four months, plaintiff received four more such notices.  (Id.).  On April 14, 2005, plaintiff sent notice to the Borough of Shenandoah of his intent to sue.  (Id. at ¶ 22).  On May 4, 2005, plaintiff appeared at

2

a preliminary hearing before Judge Joan K. Hausman.[2]  (Id. at ¶ 23).  All charges

against him were withdrawn.  (Id.).

On April 24, 2007, plaintiff filed a ten-count complaint in this court pursuant 42

U.S.C. § 1983 ("section 1983").  The complaint named as defendants the Attorney

General of Pennsylvania; the Borough of Shenandoah; Joseph Paulbinsky, a city

manager; Michael A. O'Pake, the Borough Solicitor; Matthew Nestor, the Borough's

police chief; Borough Police Officer Jamie Gennarini; and Frank R. Cori, the former

District Attorney of Schuylkill County, Pennsylvania.  Only Count I alleges violations

of federal law that would give this court jurisdiction.  That count alleged that the

Borough violated plaintiff's civil rights through a variety of means.  Plaintiff contends

that the Borough "knew or had reason to know" that Borough police officers had

"rountinely engaged" in violations of citizens' constitutional rights.  (Id. at ¶ 30).  The

Borough failed to provide training for these officers and did not investigate or

discipline officers who violated rights.  (Id. at ¶ 32). The Defendant Attorney General

and District Attorney Cori "conspired, or at a minimum had knowledge of the

conspiracy with Shenadnoah" to arrest the plaintiff without cause.  (Id. at ¶ 33).

The remaining counts in the complaint allege state law violations, though we

could also consider those claims as attempts to state a cause of action under

Section 1983 for violating the plaintiff's federal rights.  Court II contends that the

Pennsylvania Attorney General, District Attorney Cori and the Borough conspired to

_____

[2]Plaintiff does not describe in which court Judge Hausman sits.

arrest plaintiff falsely.  (Id. at ¶ 40).  Count III claims malicious prosecution against the Borough, insisting that Shenandoah brought charges against the plaintiff but knew that no grounds existed for them.   (Id. at ¶¶ 48, 51-56).  Count IV alleges harassment by the Borough against the plaintiff through the filing of the charges.  (Id. at ¶ 64).  Count V alleges negligence against Shenandoah for failing to investigate the case against plaintiff and failing to train police officers properly.  (Id. at ¶¶ 72-73). In Count VI, plaintiff claims that defendants slandered and defamed him in statements to a newspaper that made him appear to be "a liar, crazy and that he may be a danger to the public."  (Id. at ¶¶ 80, 82-84).  Count VII alleges pain and suffering and Count VIII intentional infliction of emotional distress based on the Borough's charges against the plaintiff.  (Id. at ¶¶ 90-94, 96-101).  Plaintiff's final count, Count IX, accuses Borough Solicitor Michael O'Pake of making terroristic threats against the plaintiff after a council meeting.  (Id. at 103).  Plaintiff seeks damages of $100,000 as relief on each count.  In addition to the complaint, plaintiff filed an application to proceed in forma pauperis.

Pursuant to 28 U.S.C. § 1915(e), we gave the plaintiff's complaint a preliminary screening to determine whether process should issue.  On August 2, 2007, we issued a memorandum and order dismissing the plaintiff's complaint as frivolous (Doc. 8).  On August 16, 2007, plaintiff filed a motion for reconsideration of that decision (Doc. 9), bringing the case to its present posture.

**Jurisdiction**

Because plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, we have jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 799 F.2d 906, 909 (3d Cir.1985); Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). The movant must demonstrate one of three grounds for such a motion to be granted: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or to prevent manifest injustice. Max's Seafood Cafe, 176 F.3d at 677.   A motion for reconsideration is not a proper vehicle to attempt to convince the court to rethink a decision it has already made. Glendon Energy Co. v. Borough of Glendon, 836 F. Supp.1109, 1122 (E.D. Pa. 1993). Such motions also may not be used to give a dissatisfied party a chance to "[change] theories and try again," obtaining a "'second bite at the apple.'" Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d Cir. 1995); see also Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) (finding that "The simple fact that Ogden is unhappy with the result of the April 19, 2001 opinion is an insufficient basis to

5

grant her relief.").

## Discussion

The plaintiff does not point to any intervening change in controlling law or new evidence previously unavailable in the case.  Instead, he contends that the court made clear errors of law in finding that his complaint should be dismissed.  He also argues that the preliminary screening undertaken by this court, which led to dismissal of his complaint before the parties undertook any discovery, represented a manifest injustice which requires correction.

## Complaints About the *in forma pauperis* statute

Congress enacted the *in forma pauperis* statute "'to ensure that indigent litigants have *meaningful* access to the federal courts.'" Deutsch v. United States, 67 F.3d 1080, 1084 (3d Cir. 1995) (quoting Neitzke v. Williams, 490 U.S. 319, 324 (1989)) (emphasis in original).  The statute meant "to ensure that administrative court costs and filing fees, both of which must be paid by everyone who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation." Id. Under 28 U.S.C. § 1915(e), we are permitted "to consider whether an *in forma pauperis* complaint is frivolous or malicious before authorizing issuance of the summons and service of the complaint." Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).  We may "dismiss as frivolous claims based on an indisputably meritless legal theory and whose factual contentions are clearly baseless." Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).  We undertake such

6

an evaluation before service of the complaint.

Plaintiff contends that if he had not filed his motion to proceed without paying the filing fees "his complaint would have been served," the parties would have undertaken discovery, and very likely could have reached a settlement.  He insists that the procedure for screening IFP complaints violates his First Amendment petition rights, his Fifth Amendment due process rights and his Seventh Amendment Right to a jury trial.

Courts have addressed this issue of whether the procedures for screening *in forma pauperis* claims violate the constitutional rights of an indigent plaintiff, particularly in the context of suits filed by prisoners.  They have concluded that the procedures limiting such complaints do not violate an indigent plaintiff's rights, and represent a rational means of protecting limited judicial resources.  See, e.g., In re McDonald, 489 U.S. 184 (1989) (denying prisoner the right to file a petition for a writ of *habeas corpus* the court deemed frivolous because "paupers filing *pro se* petitioners are not subject to the financial considerations–filing fees and attorney's fees–that deter other litigants from filing frivolous petitions."); In re Sindram, 498 U.S. 177, 179-80 (1991) (holding that "the Court waives filing fees and costs for indigent individuals in order to promote the interests of justice.  The goal of fairly dispensing justice, however, is compromised when the Court is forced to devote limited resources to the processing of repetitious and frivolous requests."); Christiansen v. Clarke, 147 F.3d 655, 658 (8th Cir. 1998) (finding that "in preserving scarce judicial

resources by deterring baseless, frivolous, and malicious suits, Congress was furthering a legitimate state interest" and that the screening procedure in the IFP statute was therefore constitutional.).

Plaintiff cannot claim that he did not have access to the courts because of this procedure.  The right of meaningful access to the courts requires only that a petitioner have "'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'"  <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996) (quoting <u>Bounds v. Smith</u>, 430 U.S. 817, 825 (1977)).  Here, plaintiff was able to present his claims to the court and have them considered, even if he did not achieve the result he had hoped.  <u>See, e.g.</u>, <u>Vandenberg v. Donaldson</u>, 259 F.3d 1321, 1323 (11th Cir. 2001) (finding that the screening portion of the IFP statute "only addresses procedures to be followed by the district court once an inmate's claim is presented before the court.  In no way does the section restrict the ability of a prisoner to prepare and file complaints, thereby bringing them to the court's attention.").  That disappointing result does not mean that plaintiff lacked a meaningful opportunity for his claims to be heard.

Plaintiff also raises an equal protection complaint, contending that absent the IFP screening procedure he would have been able to bring the claim under the same terms as any other plaintiff.[3]  Plaintiff does not contend that 28 U.S. § 1915, the

---

[3]We note that plaintiff did not bring his suit under the same terms as any other plaintiff, since he attempted to file that suit without paying the filing fee required of all plaintiffs who do not choose to seek *in forma pauperis* status.

8

statute of which he complains, discriminates on the basis of race, ethnicity or national origin.  As stated above, the statute does not implicate a fundamental right of access to the courts.  Accordingly, the statute must only be rationally related to a legitimate state interest to survive equal protection scrutiny.  See Kranson v. Valley Crest Nursing Home, 755 F.2d 46, 53 (3d Cir. 1985) (finding that if a statute does not implicate a protected class or a fundamental right "the statute must be sustained if it bears a rational relationship to a legitimate state interest.").  We find that the screening process employed under 28 U.S.C. § 1915(e)(2)(B) is rationally related to the legitimate state interest of allowing the indigent access to the courts while preventing frivolous lawsuits.  We will therefore deny plaintiff's motion for reconsideration on this point.

Plaintiff also alleges that our decision denied him his Seventh Amendment right to a jury trial.  The right to a jury trial does not attach upon the filing of a complaint, but attaches to the question of whether a plaintiff has a right to have facts in dispute tried by a jury.  See, e.g., Harris v. Interstate Brands Corp., 348 F.3d 761, 762 (8th Cir. 2003) (holding that "[a] grant of summary judgment does not violate the Seventh Amendment right to a jury trial.  This right exists only with respect to disputed issues of fact."); Calvi v. Know County, 470 F.3d 422, 427 (1st Cir. 2006); In re TMI Litigation, 193 F.3d 613, 725 (3d Cir. 1999).  Plaintiff's complaint did not qualify under this standard, and our decision did not deny him a right to a jury trial.  See, e.g., Duane v. Kitchen, 156 F.3d 1025, 1030 (10 th Cir. 1997) (denying that

9

dismissal under Federal Rule of Civil Procedure 12(b)(6) violated plaintiff's jury trial right, since "[w]hen Smith failed to plead any facts that would overcome the defendants' complete defenses, there were no facts to be 'tried' to a jury); Davis v. Smutzinger, 281 F. 640, 644 (3d Cir. 1922) (holding that "the method of requiring parties to frame their issue by means of proper affidavits and of entering judgment in default of proper affidavits is not in derogation of the right of trial by jury."). We will accordingly dismiss the motion on this point.

Plaintiffs also complains that he was not warned about the procedure for evaluating *in forma pauperis* complaints before he filed his action, and that we should grant the motion for reconsideration on these grounds. We reject this argument as well. While the United States Supreme Court has insisted that *pro se* complaints be read "liberally construed" and "that some procedural rules must give way because of the unique circumstance[s]" faced by some litigants, the Court has also found that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." McNeil v. United States, 508 U.S. 106, 113 (1993). In short, courts have concluded that a *pro se* plaintiff is expected to apprise herself of procedural requirements for litigation and comply with them. See, e.g., Fisher v. Johnson, 174 F.3d 710 714 (5th Cir. 1999) (holding that "ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing."); Lee v. Thompson, P.A., 163 Fed. Appx. 142 (3d Cir. 2006) (finding that "although we

10

have an obligation to liberally construe a *pro se* litigant's pleadings, 'ignorance of the law or failure to seek legal advice will not excuse failure to meet a filing deadline.'") (quoting <u>Hyman Zamft and Manard v. Cornell</u>, 707 A.2d 1068, 1071 (N.J. Super. App. Div. 1999)).  Here, plaintiff filed a motion to proceed *in forma pauperis* as well as a thirty-four page complaint that raised numerous constitutional issues.  He clearly made himself aware of his legal right to file a motion to proceed *in forma pauperis*; plaintiff's failure to read the rest of the statute should not be charged to the court.  We exercised the statutory mandate to review the complaint for frivolousness, and plaintiff's failure to apprise himself of the court's authority to do so does not provide grounds for us to grant his motion for reconsideration.[4]

**Clear Error**

Gera also argues that the court erred in its understanding of the facts of the case and therefore committed clear error in determining that some of plaintiff's claims were barred by the statute of limitations.  Specifically, the court construed plaintiff's claim against Officer Gennarini as a false arrest claim, but plaintiff contends that "Gera does not have as of now a false arrest claim against Officer Gennarini."  (Doc. 9 at ¶ 11).  Instead, he claims, Gennarini did not make the

---

[4]In any case, plaintiff filed an affidavit stating that he could not pay the filing fee required by the court.  If the plaintiff's claim in this matter is that he would not have filed a motion to proceed *in forma pauperis* if he had realized his complaint would be evaluated for frivolousness, we fail to see how plaintiff could have qualified under the statute anyway. The statute aims to assist those who could not bring an action, even filing *pro se*, without a waiver of the filing fee, not provide an option to those who would prefer to spend their money a different way.

decision to have him arrested, but simply followed orders from another person.

Plaintiff cannot know the identity of this person until he conducts discovery.

Accordingly, plaintiff claims, "the statute of limitations" on any false arrest claims "did

not even start to run because it will start to run when Gera finds out who had him

arrested." (Id.).

We note that plaintiff here agrees with our conclusion that he could not state a

claim for false arrest against Officer Gennarini.[5]  The plaintiff is wrong, however, in

claiming that the statute of limitations would not begin to run on any false arrest

claim until he found out who ordered his arrest.  As we explained in our previous

decision, Pennsylvania courts have ruled that the statute of limitations begins to run

in cases where an injury is ongoing "when the plaintiff knows, or reasonably should

know: (1) that he has been injured, and (2) that his injury has been caused by

another party's misconduct."  Cathcart v. Keene Indus. Insulation, 471 A.2d 493, 500

---

[5]The only mention that plaintiff makes of Officer Gennarini in his complaint is at ¶ 7, where he describes the defendant as "a police officer employed by the Shenandoah Police Department."  The complaint offers no further explanation of Officer Gennarini's role in the events that led to the lawsuit.  Appended to the complaint, however, was a complaint sworn out by Officer Gennarini against the plaintiff.  That complaint asked that "a warrant of arrest or a summons be issued and that the defendant be required to answer the charges I have made."  We read pro se filings generously.  Since this complaint led to the court case against the plaintiff at issue in the case, and this document provides the only indication of Defendant Gennarini's role in the action, we read the complaint to attempt to state a claim against Gennarini for false arrest.  This claim provided plaintiff with his best chance of stating a cause of action against the defendant, but was barred by the applicable statute of limitations.  At this point, plaintiff contends that he did not intend to make a false arrest claim against the defendant, but provides no argument for a claim that he intended to state against Gennarini.  Since plaintiff does not even attempt to raise a claim against Gennarini, his inclusion in the lawsuit was frivolous and we will not reconsider our decision to dismiss the case against him.

(Pa. Super. Ct. 1984). The United States Supreme Court recently declared that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." Wallace v. Kato, -- U.S. -- 127 S.Ct. 1091, 1100 (2007).  In any case, plaintiff's claim that the statute of limitations was tolled until he could discover the inner workings and decision-making process of the police department is incorrect, and we will deny the motion for reconsideration on this point as well.

Plaintiff, citing to a case from the Eastern District of New York, contends that a three-year statute of limitations exists for Section 1983 claims against police officers. State law applies to §1983 claims when determining the appropriate statute of limitations "if it is not inconsistent with federal law or policy to do so." Wilson v. Garcia, 471 U.S. 261, 265 (1985).  This court sits in Pennsylvania, and Pennsylvania law requires that the plaintiff commence his action within two years of his injury.  See 42 Pa. CONS. STAT .ANN. §5524(7) (establishing a two-year statute of limitations for "any . . . action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct").  Plaintiff has cited no inconsistent federal law or policy that would prevent applying the two-year statute of limitations in this case.   Accordingly, we will deny the motion for reconsideration on this point as well.

Plaintiff also asserts that the court erred by construing his complaint as

13

against the Pennsylvania Attorney General and not against the Office of the Attorney

General.  The complaint is captioned as "Commonwealth of Pennsylvania, Attorney

General."  This caption appears to us to refer to the individual Attorney General,

rather than his office.  Even if plaintiff intended to sue the Office of the Attorney

General, however, we still would have dismissed his claim as frivolous.  The state

attorney general's office does not approve the sorts of charges raised against

plaintiff, and the citations attached to plaintiff's complaint show that the matter was

purely a local one.  Plaintiff also cannot claim that all matters of law enforcement are

ultimately the responsibility of the Pennsylvania Attorney General, and that his office

is therefore liable for suit.  *Respondeat Superior* liability is unavailable under § 1983,

and absent a claim of actual wrongdoing against the Attorney General or his office,

or an official policy or custom that caused plaintiff's injury, his claim is frivolous.  See

Reitz v. County of Bucks, 125 F.3d 139, 144 (3d Cir. 1997) (holding that "[a] public

entity . . . may be held liable for the violation of a constitutional right under 42 U.S.C.

§ 1983 only when the alleged unconstitutional action executes or implements policy

or a decision officially adopted or promulgated by those whose acts may fairly be

said to represent official policy.").

Plaintiff also alleges that one of the parties we dismissed, Defendant

Palubinsky, was not sued, as we concluded, because he was a managerial

employee, but because he "was at the Preliminary Hearing and he maybe [sic]

involved in telling the Police to have Gera arrested."  (Motion for reconsideration

14

(Doc. 9) at 5).  This statement was not part of the complaint, but even if it were, we would still be forced to conclude that plaintiff's complaint on this point is frivolous.  If Defendant Palubinsky were a policymaker who participated in the decision to arrest the plaintiff, he could face potential liability for false arrest.  For the reasons stated above, the arrest occurred more than two years before plaintiff filed his complaint, and the claim is therefore time-barred and frivolous.  We will deny the motion on this ground as well.

**Conclusion**

For the reasons stated above, we will deny plaintiff's motion for reconsideration.  An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN M. GERA,** | : | **No. 3:07cv764** |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, ATTORNEY** | : | |
| **GENERAL,** | : | |
| **BOROUGH OF SHENANDOAH,** | : | |
| **JOSEPH L. PALUBINSKY,** | : | |
| **MICHAEL A. O'PAKE,** | : | |
| **MATTHEW R. NESTOR,** | : | |
| **JAMIE R. GENNARINI, and** | : | |
| **FRANK R. CORI, former District** | : | |
| **Attorney of Schuykill County,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

_____**AND NOW,** to wit, this 19th day of October 2007, the plaintiff's motion for

reconsideration (Doc. 9) is hereby **DENIED**.


                                        **BY THE COURT:**

                                        s/ James M. Munley
                                        **JUDGE JAMES M. MUNLEY**
                                        **United States District Court**

16